22-1377-cv
*Hoffer v. Tellone*

In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2024

ARGUED: SEPTEMBER 11, 2024
DECIDED: FEBRUARY 13, 2025

No. 22-1377

RICHARD HOFFER,
*Plaintiff–Appellant,*

*v.*

POLICE OFFICER ELYSSA TELLONE, SHIELD #730387, POLICE OFFICER
TREVOR GOFF, SHIELD #731915, POLICE OFFICER LAMONT BROWN,
SHIELD #734149, POLICE OFFICER DARCY DRUMMOND, SHIELD #731907,
*Defendants–Appellees,*

CITY OF YONKERS, CITY OF YONKERS POLICE DEPARTMENT, POLICE
OFFICER JOHN DOE 1, POLICE OFFICER JOHN DOE 2, POLICE OFFICER
JOHN DOE 3, POLICE OFFICER JOHN DOE 4, POLICE OFFICER JOHN
DOE 5, POLICE OFFICER JOHN DOE 6, POLICE OFFICER JOHN DOE 7,
POLICE OFFICER JOHN DOE 8,
*Defendants.*

————

Appeal from the United States District Court
for the Southern District of New York.

————

Before: WALKER, PARK, and NATHAN, *Circuit Judges*.

_____

Plaintiff–Appellant Richard Hoffer sued the City of Yonkers, the City of Yonkers Police Department, and various individual police officers under 42 U.S.C. § 1983, alleging that the officers used excessive force when arresting him. After trial, the jury returned a verdict in favor of the officers. Hoffer now appeals the judgment of the district court.

Hoffer's appeal is a narrow one. He argues that the district court (Krause, *M.J.*) erred in denying his request for an adverse inference instruction, based on a missing video of him being tased, pursuant to Federal Rule of Civil Procedure 37(e)(2). On appeal, Hoffer and Defendants-Appellees dispute the standard applicable to requests for adverse inference instructions under Rule 37(e)(2).

We hold that to impose sanctions pursuant to Rule 37(e)(2), a district court or a jury must find, by a preponderance of the evidence, that a party acted with an "intent to deprive" another party of the lost information. Consistent with this holding, we further hold that the lesser "culpable state of mind" standard, which includes negligence, *see Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002), does not apply to the imposition of sanctions under Rule 37(e)(2).

Applying the above standard, we conclude that the district court did not err in denying Hoffer's request for an adverse inference instruction. We therefore **AFFIRM** the judgment of the district court.

————

C. MITCHELL HENDY, Mayer Brown LLP, Los Angeles, CA, *for Plaintiff–Appellant*.

BRIAN D. GINSBERG, Harris Beach PLLC, White Plains, NY, *for Defendants–Appellees*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiff–Appellant Richard Hoffer sued the City of Yonkers, the City of Yonkers Police Department, and various individual police officers under 42 U.S.C. § 1983, alleging that the officers used excessive force when arresting him. After trial, the jury returned a verdict in favor of the officers. Hoffer now appeals the judgment of the district court.

Hoffer's appeal is a narrow one. He argues that the district court (Krause, *M.J.*)[1] erred in denying his request for an adverse inference instruction, based on a missing video of him being tased, pursuant to Federal Rule of Civil Procedure 37(e)(2). On appeal, Hoffer and Defendants-Appellees dispute the standard applicable to requests for adverse inference instructions under Rule 37(e)(2).

We hold that to impose sanctions pursuant to Rule 37(e)(2), a district court or a jury must find, by a preponderance of the evidence, that a party acted with an "intent to deprive" another party of the lost information. Consistent with this holding, we further hold that the lesser "culpable state of mind" standard, which includes negligence,

---

[1] On January 15, 2019, the parties consented to jurisdiction by a magistrate judge. On October 15, 2020, the case was reassigned from Magistrate Judge Lisa Margaret Smith to Magistrate Judge Andrew E. Krause.

*see Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002), does not apply to the imposition of sanctions under Rule 37(e)(2).

Applying the above standard, we conclude that the district court did not err in denying Hoffer's request for an adverse inference instruction. We therefore **AFFIRM** the judgment of the district court.

## BACKGROUND

On February 9, 2018, Plaintiff–Appellant Richard Hoffer commenced a § 1983 suit against the City of Yonkers, the City of Yonkers Police Department, and various individual police officers. Hoffer alleged, among other things, that the officers used excessive force during Hoffer's arrest on November 20, 2016. In late 2021, the district court held a trial on the claims against police officers Elyssa Tellone, Trevor Goff, Lamont Brown, and Darcy Drummond (collectively, the "Officer Defendants").

At trial, the parties presented differing accounts of the arrest that principally focused on Officer Goff's use of a taser gun on Hoffer. Hoffer testified that he was tased twice in the lower back while he was incapacitated, lying face down with his hands underneath his stomach, and being kicked and punched by eight to ten officers. Officer Goff, however, testified that he first tased Hoffer while Hoffer was struggling with two officers attempting to control him. Goff explained that, after issuing a standard warning, he deployed his taser from about ten feet away, and only after this point did Hoffer and the two officers fall to the ground. Goff further testified that, after the first deployment of the taser, Hoffer appeared to be "trying to collect himself and get up to flee again," so Goff performed a "drive stun" maneuver, whereby he touched Hoffer's lower back directly

with the taser gun for five seconds to "incapacitate the muscles." App'x 424.

Officer Goff explained that the taser itself generates a log, which reflects each use of the taser. The November 20, 2016 log for Goff's taser reflected two deployments: the first at 4:16 p.m., when Goff tested the taser at the beginning of his shift, and the second at 8:02 p.m., lasting eight seconds, which Goff testified corresponded to the *second* time he tased Hoffer. The log also reflected an event at 10:24 p.m. titled "USB Connected," that apparently corresponded to the taser syncing to an external device.

Officer Goff stated that each deployment of the taser generates a video. He testified that he had only seen the video of the second deployment, because the video of the first deployment "had somehow been overwritten." App'x 426. Goff did not provide any further explanation as to the absence of the first video. Prior to Goff's testimony, however, Sandra Cuebas (who was, at the time of trial, Hoffer's girlfriend) had testified that, when she was at the police station after Hoffer's arrest, she saw Officer Tellone holding a USB drive and heard her say to Goff: "It shows everything that we did and nothing that he did." App'x 389-90.

Following Goff's testimony, Hoffer's counsel orally requested that the district court instruct the jury that it could draw an adverse inference against the Officer Defendants based on the purported spoliation of the first video. At the charge conference, the district court, after assessing the request under Federal Rule of Civil Procedure 37(e)(2), declined.[2] The district court found that the

---

[2] The record appears to contain a transcription error: it reflects the district court

evidence before it was insufficient to establish that any defendant "acted with an intent to deprive [Hoffer] of the use of the video." App'x 644. It reasoned that there was no "clear evidence" that the first taser video existed in the first place, speculating that perhaps the first taser deployment did not trigger a video recording or that the first and second taser deployments happened within the same eight-second period captured by the log. App'x 644. The court further reasoned that it was not clear what Goff meant when he testified about "something being overwritten," and nothing in Goff's testimony suggested that he had any direct knowledge or experience with the document management system for taser videos, let alone with this video in particular. App'x 645. The district court observed that the theory that the video was purposely destroyed was undercut by officer testimony establishing that there were two taser deployments and no effort by defendants to "cover up that fact." App'x 645. Finally, it advised that Hoffer's counsel could address the absence of the first video in closing arguments.

After the charge conference, the district court read aloud to the jury its entire jury charge, which excluded an adverse inference instruction. When the district court asked Hoffer's counsel whether she had any objections to the jury instructions, she responded, "No, Judge." App'x 719-20.

After deliberating for two days, the jury informed the district court that it was unable to reach a unanimous verdict with respect to two of the defendants. The district court gave a modified *Allen*

---

having stated that no defendant had the "requisite intent to warrant an adverse inference instruction under Rule 37(*a*)(2)," rather than (*e*)(2). App'x 646 (emphasis added).

charge, and, after further deliberation the next day, the jury returned a unanimous verdict, finding in favor of the Officer Defendants.

Following the trial, Hoffer moved to set aside the excessive force verdict in Goff's favor and to enter a verdict in Hoffer's favor, arguing that no reasonable juror could have concluded that Goff's actions did not constitute excessive force. The district court denied Hoffer's motion and this appeal followed.

## DISCUSSION

On appeal, Hoffer argues that the district court erred by failing to instruct the jury that it could draw an adverse inference based on the purported spoliation of the first taser video. To decide that issue, we must first resolve the parties' dispute regarding the showing required for an adverse inference instruction under Rule 37(e)(2). For the reasons that follow, we hold that to impose sanctions pursuant to Rule 37(e)(2), a district court or a jury must find, by a preponderance of the evidence, that a party acted with the "intent to deprive" another party of the lost information. Further, upon application of Rule 37(e)(2), we conclude that the district court did not abuse its discretion in declining to give an adverse inference instruction in this case.

## I.  Waiver

As a threshold matter, we first address the Officer Defendants' contention that Hoffer waived or forfeited his right to challenge the district court's denial of an adverse inference instruction because after the jury charge was read to the jury, his counsel did not object to it. We find this argument to be without merit.

7

Because the district court, before it read aloud the jury charge, had definitively denied the request for an adverse inference instruction, Hoffer's counsel was not required to object to the charge to preserve Hoffer's right to appeal. *See* Fed. R. Civ. P. 51(d)(1) ("A party may assign as error . . . a failure to give an instruction, if that party properly requested it and--*unless the court rejected the request in a definitive ruling on the record*--also properly objected." (emphasis added)); *cf. Tirreno v. Mott*, 375 F. App'x 140, 141 (2d Cir. 2010) (summary order) (concluding that challenge to jury instruction was unpreserved where court did *not* definitively rule on the record with respect to plaintiffs' requested instruction and plaintiffs did not object to charge).

Hoffer's challenge, therefore, is preserved for appeal.

## II. Rule 37(e) Requirements

The parties dispute (A) whether the district court erred in requiring a showing that the spoliating party acted with "intent to deprive" for an adverse inference instruction under Rule 37(e)(2); (B) whether the requirements of Rule 37(e)(2) must be proven by clear and convincing evidence or by a preponderance of the evidence; and (C) whether the district court erred in resolving factual questions itself rather than submitting them to the jury. We address each question in turn.

### A. State of Mind Required for Sanctions Under Rule 37(e)(2)

Before 2015, a party seeking an adverse inference instruction based on lost evidence—electronic or otherwise—had to establish that a party obligated to preserve or produce such evidence who failed to

do so acted with "a culpable state of mind." *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (internal quotation marks omitted). We held that this requirement could be satisfied when a party acted knowingly or negligently—in other words, an intentional act was not required to establish a "culpable state of mind." *Id.* at 108 (internal quotation marks omitted).

Then, in 2015, Federal Rule of Civil Procedure 37(e) was amended to specify the measures a court could employ if electronically stored information ("ESI") was wrongfully lost and the findings required to order such measures. *See* Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment.[3] Rule 37 was split into two subsections. The first subsection allows a court, upon a finding of prejudice to another party arising from the loss of ESI, to order "measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The second subsection enumerates certain sanctions—namely, presuming that the lost information was unfavorable to the spoliating party, giving an adverse inference instruction to the jury, dismissing the action, or entering default judgment—that the court may impose "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2).

The Advisory Committee notes to the 2015 Amendment explicitly state that subdivision (e)(2) rejects cases such as *Residential Funding* that authorize adverse inference instructions upon a finding

---

[3] Before the 2015 Amendment, Rule 37(e) provided in full: "Absent exceptional circumstances, a court may not impose sanctions under these rules on a party for failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system." Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment.

of negligence. Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment (citing *Residential Funding*, 306 F.3d 99). The notes reason that only the *intentional* loss or destruction of evidence gives rise to an inference that the evidence was unfavorable to the party responsible for that loss or destruction; negligent—or even grossly negligent—behavior does not logically support that inference. *Id.*

Hoffer acknowledges that the plain language of Rule 37(e)(2) requires a finding of "intent to deprive," but argues that this court has continued to apply the lesser "culpable state of mind" standard articulated in *Residential Funding* even after the 2015 Amendment went into effect. Hoffer is correct that various decisions by this court, issued after the 2015 Amendment, have referenced or used the lesser "culpable state of mind" standard in the context of lost ESI. *See, e.g., Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 139–42 (2d Cir. 2023); *Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018); *Johnson v. Perry*, 763 F. App'x 81, 84 (2d Cir. 2019) (summary order); *but see Mazzei v. Money Store*, 656 F. App'x 558, 560 (2d Cir. 2016) (summary order) (stating that adverse inference instruction may only issue under Rule 37(e)(2) upon finding intent to deprive).

None of these decisions, however, expressly held that the state of mind required for a sanction under Rule 37(e)(2) could be less than "intent to deprive." Indeed, not one decision directly addressed the question presently before us: whether the 2015 Amendment abrogated the lesser "culpable state of mind" standard in the context of lost ESI. To the extent that these decisions implied that a Rule 37(e)(2) sanction could issue upon a finding of a state of mind other than "intent to deprive," any such implication was mistaken after the 2015 Amendment.

10

Today, we make clear that the imposition of a sanction under Rule 37(e)(2) requires a finding of "intent to deprive another party of the information's use in the litigation." Thus, the 2015 Amendment to Rule 37(e)(2) abrogated the lesser "culpable state of mind" standard used in *Residential Funding*, 306 F.3d at 108 (internal quotation marks omitted), in the context of lost ESI. A party's acting negligently or knowingly will not suffice to justify the sanctions enumerated in Rule 37(e)(2).

In holding that the requisite state of mind to impose a sanction under Rule 37(e)(2) is "intent to deprive," we join the majority of our sister circuits. *See Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024); *Ford v. Anderson Cnty., Texas*, 102 F.4th 292, 323–24 (5th Cir. 2024); *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1312 (11th Cir. 2023) (specifying that "intent to deprive" means "more than mere negligence"); *Wall v. Rasnick*, 42 F.4th 214, 222–23 (4th Cir. 2022); *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018); *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016) ("A showing of negligence or even gross negligence will not do the trick.").

We note that, in deciding the foregoing, we do not call into question the applicability of *Residential Funding* to cases that fall outside the province of Rule 37(e)(2)—namely, cases evaluating the loss of non-electronic evidence.

### B.     Burden of Proof for Rule 37(e)(2) Determination

The parties dispute whether Rule 37(e)(2)'s requirements must be proven by clear and convincing evidence or by a preponderance of the evidence. Although Hoffer did not raise this issue in his opening brief, we nevertheless have discretion to address it. *See Patterson v. Balsamico*, 440 F.3d 104, 112 (2d Cir. 2006) ("[T]his [c]ourt has

11

discretion to decide the merits of a forfeited claim or defense where the issue is purely legal and there is no need for additional fact-finding." (internal quotation marks omitted)).  Further, we think it necessary to address the issue in light of the varying approaches taken by district courts within this circuit.  *See, e.g.*, *Chepilko v. Henry*, 722 F. Supp. 3d 329, 338 n.2 (S.D.N.Y. 2024) (reasoning that "intent to deprive" must be shown by clear and convincing evidence "given the severity of the sanctions permitted under" Rule 37(e)(2) (quoting *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-CV-9363 (ALC) (DF), 2018 WL 1512055, at *1 (S.D.N.Y. Mar. 12, 2018))); *Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 175 (S.D.N.Y. 2022) (applying "clear and convincing" burden to "intent to deprive"); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 (KBF), 2016 WL 11727416, at *5 (S.D.N.Y. May 19, 2016) (applying preponderance burden to "intent to deprive" finding).

We think that the preponderance standard is appropriate for a number of reasons.  First, the preponderance standard is the "usual rule in civil cases."  *In re Plaza Shoe Co.*, 15 F.2d 278, 279 (2d Cir. 1926).  Indeed, we have already stated outside the context of Rule 37(e)(2) that a party seeking discovery sanctions on the basis of spoliation must show the requisite elements by a preponderance of the evidence.  *See Klipsch Grp.*, 880 F.3d at 628; *see also ComLab, Corp. v. Tire*, 815 F. App'x 597, 600 (2d Cir. 2020) (summary order).  Adhering to this usual rule furthers the goal of uniformity.

Second, the nature of the sanctions authorized by Rule 37(e)(2) does not justify venturing above the preponderance default.  The Supreme Court has observed that "we presume that [the preponderance-of-the-evidence] standard is applicable in civil actions between private litigants unless particularly important individual

interests or rights are at stake." *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (internal quotation marks omitted). The Supreme Court has listed as examples of such "important individual interests or rights": proceedings to terminate parental rights, involuntary commitment proceedings, and deportation, while noting that other "severe civil sanctions" can be proved by a preponderance of the evidence. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 389–90 (1983) (collecting cases). The issuance of an adverse inference instruction, or even the dismissal of an action, does not invoke interests or rights of the same caliber as those proceedings listed above. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778 (7th Cir. 2016) ("The interests implicated by the dismissal of a suit as a sanction for misconduct occurring in civil litigation (including discovery) are not so important as to demand that the facts underlying the dismissal be established by clear and convincing evidence.").

Third, the specific intent required to impose sanctions under Rule 37(e)(2) sets a sufficiently high bar such that a "clear and convincing" burden of proof is unnecessary. As district courts have recognized, the "intent to deprive" standard is "both stringent and specific," and contemplates "not merely the intent to perform an act that destroys ESI but rather the intent to actually deprive another party of evidence." *Karsch v. Blink Health Ltd.*, No. 17-CV-3880 (VM) (BCM), 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019) (quoting *Leidig v. Buzzfeed, Inc.*, No. 16-CV-542 (VM) (GWG), 2017 WL 6512353, at *11 (S.D.N.Y. Dec. 19, 2017)). Proving such specific intent is not easy and frequently depends upon circumstantial evidence. *See Huddleston*, 459 U.S. at 390 n.30 ("If anything, the difficulty of proving the defendant's state of mind supports a lower standard of proof.").

Fourth, neither the language of Rule 37(e)(2) nor the Advisory Committee notes to the 2015 Amendment suggests an intent to impose a heightened burden of proof. Indeed, if the Rule's drafters had sought to deviate from the default preponderance standard, they could have done so explicitly, just as they explicitly rejected certain severe sanctions in cases of mere negligence.

Finally, the default preponderance standard is preferable because, as we have previously observed, imposing "too strict a standard of proof" in the context of establishing entitlement to an adverse inference instruction risks "subvert[ing] the prophylactic and punitive purposes of the adverse inference." *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998).

For all these reasons, we hold that a party seeking sanctions under Rule 37(e)(2) must establish the requisite elements—including that the party act with "intent to deprive"—by a preponderance of the evidence.

### C.     Whether the Jury Must Find Facts and Make Credibility Determinations for a Rule 37(e)(2) Ruling

Hoffer argues that it should be left to the jury to resolve disputed questions of fact relating to whether the prerequisites for issuing an adverse inference instruction have been met. We disagree.

Rule 37(e) plainly contemplates that findings relevant to the imposition of sanctions, including the finding of an "intent to deprive," be made by courts. *See* Fed. R. Civ. P. 37(e) ("*[T]he court . . . only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may . . . instruct the jury that it may or must presume the information was*

14

unfavorable to the party . . . ." (emphasis added)); *see also* Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment ("Subdivision (e)(2) limits the ability of *courts* to draw adverse inferences based on the loss of information in these circumstances, permitting them only when *a court* finds that the information was lost with the intent to prevent its use in litigation." (emphasis added)). And, although Rule 37(e)(2) allows courts to delegate the intent finding to the jury, whether to do so is left to the court's discretion. *See* Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment ("If a court were to conclude that the intent finding should be made by a jury, the court's instruction should make clear that the jury may infer from the loss of the information that it was unfavorable to the party that lost it only if the jury first finds that the party acted with the intent to deprive another party of the information's use in the litigation.").

Finally, this court has observed that "one of the district court's roles in resolving a motion for sanctions is to act as factfinder." *Rossbach*, 81 F.4th at 139–40 (holding that Rule 37(e) sanctions "do[] not implicate the Seventh Amendment's jury trial guarantee" and that district court was entitled to make findings of fact and credibility determinations). That a district court would make factual findings to resolve a motion affecting the admission of evidence as a sanction is routine. A comparable example is a motion to suppress evidence.[4]

---

[4] In contending that the district court should have left any factual questions to the jury, Hoffer chiefly relies on *Van Winkle v. Rogers*, which held, in the context of spoliation of non-ESI, that "[i]f a genuine dispute of material fact exists as to bad faith, a jury should make that determination." 82 F.4th 370, 378 (5th Cir. 2023). *Van Winkle*, however, does not bind this court, does not address Rule 37, and appears to contradict our decision in *Rossbach*.

We conclude, therefore, that although a district court *may* reserve for the jury questions of fact related to adverse inference instructions under Rule 37(e)(2), it is also proper for a district court to make those factual determinations—including a finding of "intent to deprive"—itself.

\* \* \*

In sum, we hold that to impose sanctions pursuant to Rule 37(e)(2), a district court (or a jury, if authorized by the district court) must find, by a preponderance of the evidence, that a party acted with the "intent to deprive" another party of the lost ESI. The lesser "culpable state of mind" standard articulated in *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99 (2d Cir. 2002), does not apply to the imposition of sanctions under Rule 37(e)(2).

### III. Application of Rule 37(e)(2) to This Case

We review the grant or denial of a motion for Rule 37 discovery sanctions for abuse of discretion. *See Lore v. City of Syracuse*, 670 F.3d 127, 174 (2d Cir. 2012). We accept a district court's factual findings in determining whether to impose sanctions unless they are clearly erroneous. *See Rossbach*, 81 F.4th at 139. With the above-stated Rule 37(e)(2) framework in mind, we conclude that the district court did not abuse its discretion in declining to instruct the jury that it could infer that the purportedly lost taser video was unfavorable to the Officer Defendants.

In denying Hoffer's request for an adverse inference instruction, the district court, applying the correct "intent to deprive" standard, concluded that the evidence was insufficient to establish that any defendant acted with the intent to deprive Hoffer of the use

16

of the first taser video. The district court reasoned that it did not "know what to make of" the taser report, which reflected only one use of the taser during the arrest, and that there was "just not enough evidence for [the court] to be even convinced" that there ever existed a video of the first taser deployment. App'x 644–45. The district court further observed that it was "not at all clear" what Officer Goff meant by information being "overwritten," and that "nothing about Sergeant Goff's testimony suggested that he had any direct knowledge or experience with the document management system for these taser videos, let alone anything having do with this particular video." App'x 645. These findings were not clearly erroneous.

Even assuming that there were sufficient evidence of the first video's existence, the district court did not clearly err in finding insufficient evidence that any defendant acted with intent to deprive Hoffer of the video. The strongest evidence of such intent was Ms. Cuebas's testimony that she saw Officer Tellone holding a USB drive and heard her say that "[i]t shows everything that we did and nothing that he did." App'x 389–90. Although the district court did not discuss this evidence in its ruling, it was entitled to make its own credibility determinations and to discount Ms. Cuebas's testimony, as discussed above. Indeed, the district court had previously registered its skepticism of Ms. Cuebas's credibility. *See* App'x 500 (noting that Ms. Cuebas had a relationship with Hoffer). Additionally, the district court reasonably noted that "the notion that the Yonkers Police Department went to such lengths to destroy a video and manipulate this taser record" was undercut by officer testimony establishing that there were two deployments, and that "if there was an effort to cover up that fact," such testimony would be "surprising." App'x 645–46.

17

Although the district court did not specify what burden of proof it applied, it does not appear that it improperly applied a heightened "clear and convincing" standard. The district court's statement that there was no "clear evidence" that a first video existed, App'x 644, does not alone indicate that it applied the "clear and convincing" standard to the intent analysis. In any event, the district court's assessment of the evidence demonstrates that the evidence would readily fall short of the preponderance threshold, as it did not find "*any* direct or circumstantial evidence that the City of Yonkers or any of the individual defendants had the requisite intent to warrant an adverse inference instruction under Rule 37([e])(2)." App'x 646 (emphasis added).

In sum, we conclude that the district court did not abuse its discretion in denying Hoffer's request for an adverse inference instruction under Rule 37(e)(2).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

18